IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LAWRENCE T. MARTIN,

    Defendant.
_____

REPORTER'S TRANSCRIPT
Change of Plea
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER,
Judge, United States District Court for the District of
Colorado, commencing at 1:31 p.m., on the 25th day of June,
2012, in Courtroom A701, United States Courthouse, Denver,
Colorado.

APPEARANCES

    Guy Till, U.S. Attorney's Office, 1225 17th Street
East, Suite 700, Denver, CO 80202, appearing for the plaintiff.

    Thomas James Hammond  of Thomas J. Hammond, P.C.,
1544 Race Street, Denver, CO 80206, appearing for the
defendant.

Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Janet M. Coppock, 901 19th Street,
Room A257, Denver, Colorado, 80294, (303) 893-2835

1          PROCEEDINGS

2          THE COURT:  Court is convened this afternoon in

3 Case 12-CR-10.  This is encaptioned for purposes of this

4 hearing a change of plea hearing as the United States of

5 America v. Lawrence T. Martin.

6          Could I have entries of appearance, please?

7          MR. TILL:  Good afternoon, Your Honor.  I am Guy Till.

8 I am an Assistant United States Attorney representing the

9 government.  Also present at counsel table to assist me is ATF

10 Special Agent Jason Cole, Your Honor.

11          THE COURT:  Good afternoon and welcome.

12          MR. HAMMOND:  Good afternoon, Your Honor.  I am Tom

13 Hammond on behalf of Mr. Martin.  Mr. Martin is to my left

14 seated in the blue shirt.

15          THE COURT:  Good afternoon and welcome.

16          Are you ready to proceed?

17          MR. TILL:  Yes, Your Honor, we are.

18          MR. HAMMOND:  Yes, Your Honor.

19          THE COURT:  Thank you.

20          Mr. Hammond, would you and your client please approach

21 the lectern.

22          This matter is before the Court for a change in the

23 defendant's plea for re-arraignment pursuant to Rule 10 and for

24 consideration of an advisement with regard to the parties' plea

25 agreement in accordance with Rule 11, both the Federal Rules of

1    Criminal Procedure.

2         The record reflects that the defendant was charged

3    initially in an indictment filed with the Court on January 9,

4    2012, and subsequently at Docket No. 180, a first superseding

5    indictment was filed on February 6, 2012.  He was charged in

6    both the indictment and the superseding indictment.

7         I understand that he entered pleas of not guilty to

8    the charges against him and that pursuant to the terms of a

9    written plea agreement, he now desires to change his plea to a

10   plea of guilty to Count 32 in the original indictment.  And in

11   exchange for that, the government intends to dismiss all

12   remaining counts in the original indictment and all counts

13   against him in the superseding indictment.

14        Is that correct?

15        MR. TILL:  Yes, Your Honor, it is.

16        THE COURT:  Then would you please re-arraign.

17        MR. TILL:  Yes, Your Honor.

18        Sir, are you the same Lawrence T. Martin that was

19   indicted by the grand jury in this case in Count 32?

20        THE DEFENDANT:  Yes, sir.

21        MR. TILL:  Sir, the allegation in Count 32 is using

22   and maintaining a drug involved premises and aiding and

23   abetting another to do so.  The allegation states that between

24   on or about January 1st, 2005, to on or about December 30th,

25   2011, within the State and District of Colorado, you,

1   Mr. Lawrence T. Martin, knowingly maintained and used a place,

2   to wit: premises informally known as the Hell's Lovers

3   Motorcycle Club clubhouse, for the purpose of using and

4   distributing quantities of a substance and mixture containing a

5   detectable amount of marijuana, a Schedule I controlled

6   substance, and quantities of a substance containing a

7   detectable amount of cocaine, a Schedule II controlled

8   substance, and intentionally aided and abetted another to

9   maintain and use said premises for the purposes of using and

10   distributing Schedule I and Schedule II controlled substances.

11   All in violation of Title 21, United States Code, Section

12   856(a)(1) and (2) and (b), and Title 18, United States Code,

13   Section 2, Maintaining drug-involved premises, and aiding and

14   abetting another to do so.

15           Sir, do you understand this charge?

16           *THE DEFENDANT:*  Yes, sir.

17           *MR. TILL:*  Sir, do you have any questions about this

18   charge?

19           *THE DEFENDANT:*  No, sir.

20           *MR. TILL:*  Sir, at this time today how do you plead to

21   this charge?  Do you plead not guilty or do you plead guilty to

22   Count 32?

23           *THE DEFENDANT:*  Guilty.

24           *THE COURT:*  You need to speak up, sir, and into the

25   microphone, please.

1          *THE DEFENDANT:*  Guilty.

2          *THE COURT:*  Can you say that a little louder into the

3    microphone, please.

4          *THE DEFENDANT:*  I plead guilty, Your Honor.

5          *THE COURT:*  Thank you.

6          *MR. TILL:*  Thank you, Your Honor.

7          *THE COURT:*  As of this moment, sir, you are not bound

8    by your plea of guilty.  Indeed, you are not bound by this plea

9    until I accept it.  You can change your mind at any time during

10   this hearing until I accept your plea.  In order to accept your

11   plea, I have to be sure that you understand the charges that

12   are brought against you, that you understand your choices and

13   the consequences that flow from those choices.

14        I have to be sure that your decision to plead guilty

15   so voluntary and you haven't been pressured into it.  I have to

16   be sure that there is a factual basis to support your plea.

17   And because your plea agreement also includes a waiver of other

18   statutory and constitutional rights, I have to be sure that you

19   are knowingly and voluntarily waiving those rights.

20        Throughout this hearing I want you to let me know if

21   there is anything you don't understand or if you have any

22   questions.  And if you would like to confer with Mr. Hammond at

23   any time, just let me know and we will take a brief recess so

24   you can confer privately.

25        I begin by asking you a number of questions.  They are

1    not intended to trap or embarrass or insult or offend you.  The

2    questions are important because your answers are important.

3    It's your answers that I evaluate in order to determine whether

4    I can accept your plea or not.  Therefore, you must answer my

5    questions truthfully and completely.  Indeed just like a

6    witness, you take a solemn oath promising to tell the truth.

7    And if you don't, your answers can be used against you if an

8    action is brought against you for false statement or perjury.

9              Do you understand?

10             *THE DEFENDANT:*  Yes, ma'am.

11             *THE COURT:*  Are you ready to proceed?

12             *THE DEFENDANT:*  Yes.

13             *THE COURT:*  Would you please administer the oath.

14             *(Whereupon, the defendant was sworn.):*

15             *THE DEFENDANT:*  I do.

16             *THE COURT:*  Mr. Martin, how old are you?

17             *THE DEFENDANT:*  54, ma'am.

18             *THE COURT:*  What level of school did you complete?

19             *THE DEFENDANT:*  High school and part of college, 63

20   hours of college.

21             *THE COURT:*  Do you have any difficulty reading or

22   writing?

23             *THE DEFENDANT:*  No, ma'am.

24             *THE COURT:*  Within the last 24 hours, have you taken

25   any medication?

1          THE DEFENDANT:  Just regular blood pressure medicine.

2          THE COURT:  What are you taking for blood pressure?

3          THE DEFENDANT:  Lotrel.

4          THE COURT:  How long have you been on it?

5          THE DEFENDANT:  Diagnosed in 2000.

6          THE COURT:  You have been taking it since 2000, then?

7          THE DEFENDANT:  Yes, ma'am.  Also diabetic.

8          THE COURT:  I am sorry?

9          THE DEFENDANT:  Also diabetic.

10          THE COURT:  Are you taking medication for that?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  What are you taking for that?

13          THE DEFENDANT:  I take a shot in my stomach one time a

14  day.

15          THE COURT:  All right.  Any side effects from these

16  medications?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  To the best of your knowledge, have you

19  ever been diagnosed with any form of mental illness?

20          THE DEFENDANT:  No, ma'am.

21          THE COURT:  Within the last 24 hours, have you used

22  any drug or alcohol?

23          THE DEFENDANT:  No, ma'am.

24          THE COURT:  Is there anything about the way you feel

25  today physically, mentally or emotionally that makes it hard

1    for you to understand what is happening?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Have you read and do you understand the

4    charges against you in the original indictment and the

5    superseding indictment?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Have you discussed those with Mr. Hammond?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Asked him all the questions you had?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  Has he answered all of your questions?

12             THE DEFENDANT:  Yes, he has.

13             THE COURT:  Are there any other questions you want to

14   ask him?

15             THE DEFENDANT:  No, ma'am.

16             THE COURT:  Mr. Hammond, could you identify the plea

17   agreement for the record, please?

18             MR. HAMMOND:  Your Honor, that's going to be a little

19   difficult because I have got the -- I have it as a Court's

20   Exhibit 1, if that's what you mean.

21             THE COURT:  That's what I am asking you to do.

22             MR. HAMMOND:  I wasn't sure if you wanted the ECF

23   document number because I haven't had that.

24             THE COURT:  Well, no, because it hasn't been filed

25   yet.

1            *MR. HAMMOND:*  The plea agreement is identified as

2    Exhibit 1.  The statement in advance is identified as

3    Exhibit 2.

4            *THE COURT:*  Perfect.  Thank you.

5            Mr. Martin, would you please turn to Exhibit 1.  It's

6    in front of you.  Have you read this document?

7            *THE DEFENDANT:*  Yes, ma'am.

8            *THE COURT:*  Discussed it with Mr. Hammond?

9            *THE DEFENDANT:*  Yes, ma'am.

10           *THE COURT:*  Have you asked him all the questions you

11   had about it?

12           *THE DEFENDANT:*  Yes, ma'am.

13           *THE COURT:*  Has he answered all of your questions?

14           *THE DEFENDANT:*  Yes, he has.

15           *THE COURT:*  The document has a lot of legal language

16   in it.  Do you understand what it says and what it means?

17           *THE DEFENDANT:*  He explained it to me, ma'am.

18           *THE COURT:*  Do you now understand what it says and

19   what it means?

20           *THE DEFENDANT:*  Yes, ma'am.

21           *THE COURT:*  Do you have any questions about what it

22   says or means?

23           *THE DEFENDANT:*  No, ma'am.  I went over that.

24           *THE COURT:*  Does it reflect all of your agreement with

25   the government?

1    *THE DEFENDANT:*  Yes, ma'am.

2         *THE COURT:*  Would you turn to Page 3, please,

3    Paragraph D.  You will note in that paragraph that you are

4    giving up a number of rights that you have.  Notably, you are

5    giving up the right to appeal the sentence that is imposed here

6    except under limited circumstances.  You will not be able to

7    appeal from the sentence that is imposed unless it exceeds the

8    statutory maximum or it is a sentence that is above the

9    applicable federal sentencing guideline range or the sentencing

10   guideline range is premised upon an adjusted offense level

11   higher than 13.

12         Now, in addition, you have both a constitutional right

13   and a statutory right to challenge the prosecution, conviction

14   and sentence in this case that you are giving up, and you are

15   giving up this right except in various limited circumstances.

16   We often call this right the right to seek a writ of habeas

17   corpus.

18         And you are giving up that right except in

19   circumstances where there is an explicitly retroactive change

20   in the applicable federal sentencing guideline or sentencing

21   statute or if you have a claim that you were denied

22   constitutionally effective assistance of counsel or in

23   circumstances where you claim that you were a victim of

24   prosecutorial misconduct.

25         The very last sentence in this paragraph also tells

1   you that if the government appeals from the sentence, then all

2   of your waivers are set aside and you retain the rights that

3   you originally had.

4          Do you understand this?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Did you sign the plea agreement?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Would you look at the last page, please.

9   Is that your signature?

10         THE DEFENDANT:  Yes, ma'am, it is.

11         THE COURT:  Thank you.

12         Mr. Hammond, did you also sign the plea agreement?

13         MR. HAMMOND:  Yes, I did, Your Honor.

14         THE COURT:  I understand you discussed the plea

15  agreement with Mr. Martin and you answered his questions.  Are

16  you satisfied that he understands the contents of Exhibit 1?

17         MR. HAMMOND:  Yes, I am.

18         THE COURT:  Did you review the discovery in this case?

19         MR. HAMMOND:  Yes, I have.

20         THE COURT:  Does it comport with the facts that are

21  recited in Exhibit 1?

22         MR. HAMMOND:  Yes.

23         THE COURT:  Thank you.

24         Mr. Till, does Exhibit 1 also bear your signature?

25         MR. TILL:  It does, Your Honor.

1          *THE COURT:*  Thank you.

2          Mr. Martin, in Exhibit 1 there is a statement of what

3    the government believes it can prove if this matter were to go

4    to trial.  By entering into the plea agreement, you are

5    admitting that these facts are true.  I will treat them as true

6    for purposes of considering your plea and also for purposes of

7    sentencing.

8          Therefore, I am going to ask Mr. Till to recite the

9    facts that you have agreed to.  Listen closely to what he says

10   because when I finish, I am going to ask you if these facts are

11   true, and you must tell me if you have any disagreement with

12   the facts recited by Mr. Till.  Do you understand?

13         *THE DEFENDANT:*  Yes, ma'am.

14         *THE COURT:*  Thank you.

15         Mr. Till, would you recite the facts upon which the

16   parties agree.

17         *MR. TILL:*  Yes, Your Honor.

18         The specific time frame we are looking at for

19   Mr. Martin is October of 2010 with regard to the violation for

20   Count 32, the facts are as follows:

21         Between January 2005 and January 2012, as witnessed in

22   part by an ATF undercover special agent and a number of

23   confidential human sources of information working with law

24   enforcement, on Friday and Saturday nights of the average week,

25   the premises informally known as the Hell's Lovers Motorcycle

1    Club clubhouse, located in the Denver metropolitan area, within

2    the District of Colorado, would be the scene of gatherings

3    where Hell's Lovers Motorcycle Club members and visitors

4    consumed and shared marijuana and cocaine.  The Hell's Lovers

5    Motorcycle Clubhouse was the scene of cocaine or marijuana

6    consumption by 30 to 40 persons on any given Thursday, Friday

7    or Saturday night for approximately 40 weeks out of the average

8    year.

9            On or about October 30th, 2010, the routine and

10   repeated use of marijuana and cocaine at the Hell's Lovers

11   Motorcycle Club clubhouse was known to the defendant.  The

12   clubhouse was operated under the direction of the Hell's Lovers

13   Motorcycle Club "christened members" and the officers of the

14   Colorado Chapter of the Hell's Lovers Motorcycle Club.  The

15   defendant knew marijuana was shared and used routinely and

16   regularly at the Hell's Lovers Motorcycle Club clubhouse.  The

17   defendant used marijuana at the clubhouse.  The defendant was a

18   "christened" member of Hell's Lovers Motorcycle Club and

19   president of the Colorado Chapter of Hell's Lovers Motorcycle

20   Club.

21           By serving as president and by visiting and

22   patronizing the clubhouse, the defendant intentioned aided and

23   abetted Hell's Lovers Motorcycle Club Colorado Chapter

24   "christened" members and officers to maintain the Hell's Lovers

25   Motorcycle Club clubhouse as a place where marijuana and

1  cocaine were routinely shared and consumed.

2          The Hell's Lovers Motorcycle Club clubhouse was

3  supported and maintained by profits from the sales of

4  refreshments and by dues paid by active members of Hell's

5  Lovers Motorcycle Club, including fully patched and

6  "christened" members, probationary members, prospective

7  members, and "property of" female associates.  Clubhouse

8  expenses such as rent and utilities were paid by the Hell's

9  Lovers Motorcycle Club Chapter Treasurer using Hell's Lovers

10  Motorcycle Club funds collected from the sales of beverages and

11  dues paid by the members and associates.

12          For purposes of relevant offense conduct, the parties

13  stipulate the quantity of cocaine shared and consumed at the

14  Hell's Lovers Motorcycle Club clubhouse in October 2010 was

15  less than 20 grams of cocaine mixture and substance and the

16  amount of marijuana shared and consumed at the Hell's Lovers

17  Motorcycle Club clubhouse was less than 1 kilogram of

18  marijuana.

19          Your Honor, that concludes the factual basis.

20          *THE COURT:*  Thank you.

21          Mr. Martin, are these facts true?  Are these facts

22  true?

23          *THE DEFENDANT:*  Yes, ma'am.

24          *THE COURT:*  Then let's talk about penalty here.  For

25  violation of the offense charged in Count 32, the maximum

1    penalty is 20 years of imprisonment.  The maximum fine,

2    $500,000.  Both a term of imprisonment and a fine can be

3    imposed.  A term of imprisonment can be followed by up to three

4    years of supervised release.  And there is a mandatory $100

5    special assessment.  That's mandated by statute.

6         Now, in the federal system, we do not measure terms of

7    incarceration by years, but instead by months.  There is no

8    automatic reduction.  There is no parole.  That means that

9    every month you're sentenced to serve you will serve.  And

10   there are a limited number of ways to reduce a sentence, a

11   couple of which you are giving up by the terms of this plea

12   agreement.

13        The first way to reduce a sentence is on the motion of

14   the government brought shortly after a judgment is entered.

15   The second is through a successful appeal and resentencing, but

16   remember, you are waiving your right to appeal from the

17   sentence that is imposed except in very limited circumstances.

18        The third is through a collateral attack through a

19   petition seeking a writ of habeas corpus, but again, remember,

20   you are waiving that right except in very limited circumstances

21   as well.  And finally, the Bureau of Prisons has discretion to

22   give you a credit against your sentence if you follow its rules

23   and regulations.  The Bureau of Prisons makes that

24   determination on an annual basis and they are limited to giving

25   54 days per year good time credit.  They make that

1    determination based on your behavior and whether it complies

2    with their standards.

3          Now, after completion of a prison term there is a term

4    called supervised release and here that can be as long as three

5    years.  While one is on supervised release, one must abide by

6    all of the conditions that are imposed and a probation officer

7    monitors your compliance with those conditions.  You are

8    obligated to follow all the conditions all the time.  It's not

9    enough to try and it's not enough to follow some of the

10    conditions, but not others.

11          The conditions fall into two different categories,

12    standard conditions and special conditions.  Standard

13    conditions apply to all terms of supervised release.  And as

14    you might guess, there are lots of those.  I am only going to

15    mention three, but you should understand there are many more.

16    The three that I will draw to your attention are these:  On

17    supervised release you can't commit any new crimes, state,

18    federal or local.  You cannot use, sell or possess any illegal

19    substances.  And you cannot use, sell or possess any prohibited

20    firearms.  Now, in addition to these three conditions, as I

21    said, there are many other standard conditions.

22          And then there can be special conditions.  Special

23    conditions are unique to you and your particular circumstances.

24    I don't always have a good idea of what special conditions

25    might apply at this juncture in a case, but I can guess here

1    given the nature of this conviction that there may be a special

2    condition imposed that pertains to drug use.  There may be

3    periodic drug checks.  There may be mandatory participation in

4    a substance abuse rehabilitation program.

5         If you have had an issue with abusing alcohol, you may

6    be required to participate in an alcohol rehabilitation program

7    too.  And if you have had or you develop some indicia of mental

8    health issues, you may be required to go through a mental

9    health assessment and participate in mental health treatment.

10   To the extent that you are directed to, you may have to pay for

11   these programs as well as participate in them.

12        Now, you will recall that I said you have to follow

13   all of them all of the time.  And it's important to understand

14   what the penalty is if you don't.  If you don't adhere to all

15   of the conditions all of the time, the probation officer with

16   the assistance of the United States Attorney can bring you back

17   here to this courtroom or to another courtroom and ask that

18   your supervised release term be revoked.  And if it is revoked,

19   you can be returned to prison for another term.

20        Now, in deciding what penalty is appropriate for the

21   violation charged in Count 32, I am going to be considering a

22   few other statutes than just the statute of conviction.  One of

23   the statutes that I will be considering is 18 U.S.C. 3553.  I

24   call it the umbrella statute for sentencing in the federal

25   system because it applies to all sentences.  And it tells me

1    that I have to impose a sentence that promotes respect for the

2    law, provides just punishment, adequately deters criminal

3    conduct, protects the public from further crimes by you, and

4    provides you with needed educational or vocational training,

5    medical care or other correctional treatment in the most

6    effective manner.

7         The same statute tells me what factors I can consider

8    in determining a sentence.  I can consider the nature and

9    circumstances of the offense, your history and characteristics,

10   the kinds of sentences that are available, what the federal

11   sentencing guidelines would require, the need to avoid

12   unwarranted sentence disparities among defendants with similar

13   records found guilty of similar conduct, and in the appropriate

14   case I would consider the need for restitution.

15        I know that in Exhibit 1 your attorney and the

16   government's attorney have calculated the sentence that they

17   anticipate may apply here.  And you will find these

18   calculations beginning on Page 8 of Exhibit 1.  There are

19   several things that you need to know about these calculations.

20   First of all, they are not binding on the Court.  There is no

21   guaranteed sentence.

22        Secondly, the calculations with regard to the federal

23   sentencing guidelines are an estimate, a prediction based upon

24   what the attorneys knew at the time you entered into this

25   agreement, but at the time of sentencing we will not be working

1    from this document.  We will be working from another document

2    that also has a calculation of how the federal sentencing

3    guidelines apply.

4         That document is called the Presentence Investigation

5    Report and it's prepared by the probation office of the court.

6    That contains a calculation under the federal sentencing

7    guidelines and sometimes it doesn't match what is in the plea

8    agreement.  That is one reason why you and Mr. Hammond will

9    have an opportunity to meet with the probation officer who

10   prepares the report before the report is prepared and you will

11   have an opportunity to review the report after it is prepared.

12        If you think there is an error or a mistake in the

13   report, you can bring it to the attention of the probation

14   officer before the sentencing.  And if the probation officer

15   doesn't adequately address your concerns, you can raise the

16   issue at the time of sentencing.

17        Now, finally you should understand that calculations

18   under the federal sentencing guidelines are only one factor

19   that I consider in determining your sentence.  It's an

20   important factor, but it's not the only factor.  It's a

21   starting point, but it's not necessarily the ending point, and

22   that's because the sentence I impose has to satisfy those

23   sentencing guidelines -- I am sorry, the sentencing objectives

24   I just referred to a minute ago.

25        And if the guideline calculation doesn't yield a

1    sentence that satisfies those objectives, then I can impose a

2    non-guideline sentence.  Sometimes people call that a variant

3    sentence, sometimes people call it a statutory sentence, but it

4    all means the same thing.  It's simply a sentence that is

5    outside the guideline range or a non-guideline sentence.  And a

6    non-guideline sentence can be higher than or lower than the

7    guideline range, whatever is necessary to satisfy those

8    sentencing objectives I mentioned a few minutes ago.

9           Your sentencing hearing will occur a number of weeks

10   from now.  And as I said, before that hearing you and

11   Mr. Hammond will meet with the probation officer.  You will get

12   a chance to see the Presentence Investigation Report.  Please

13   don't be confused with my reference to a probation officer.

14   It's the title of the person who is preparing the report, has

15   nothing to do with the sentence.

16          At the time of sentencing Mr. Hammond and Mr. Till

17   will each have an opportunity to argue about the sentence.

18   They may focus on the contents of the report or whether the

19   sentence should be guideline or non-guideline or where in the

20   guideline range it should be imposed or any other kind of

21   related argument.  You will have an opportunity to make a

22   statement, but no one other than Mr. Hammond will be able to

23   make a statement on your behalf.

24          If there are other people who would like to say

25   something to me to consider in the sentencing, they may write a

1  letter and send it to the probation officer, not to me, to the

2  probation officer, so that it is included in the Presentence

3  Investigation Report.

4        Do you understand the objectives and factors that will

5  be evaluated in determining your sentence?

6        THE DEFENDANT:  Yes, ma'am.

7        THE COURT:  Do you understand the maximum sentence

8  that can be imposed?

9        THE DEFENDANT:  Yes, ma'am.

10       THE COURT:  Do you understand that the charge you are

11  pleading guilty to is a felony?

12       THE DEFENDANT:  Yes, ma'am.

13       THE COURT:  Do you understand that can affect your

14  civil rights?

15       THE DEFENDANT:  Yes, I do.

16       THE COURT:  It could affect your right to vote, hold

17  public office, serve on a jury or possess firearms or obtain

18  licenses from any number of governmental authorities.

19       THE DEFENDANT:  Yes, ma'am.

20       THE COURT:  Do you understand the sentence I impose

21  may be more severe than what is calculated in Exhibit 1?

22       THE DEFENDANT:  Yes, ma'am.

23       THE COURT:  Do you understand that if I accept your

24  plea, no matter what the sentence is you will not be able to

25  withdraw it at the time of sentencing?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  Do you have any questions about

3    sentencing?

4           THE DEFENDANT:  No, ma'am.

5           THE COURT:  Thank you.  Would you turn, then, to Court

6    Exhibit 2.  Have you read this document?

7           THE DEFENDANT:  Yes, ma'am, I have.

8           THE COURT:  Have you discussed it with Mr. Hammond?

9           THE DEFENDANT:  Yes, I have.

10          THE COURT:  Have you asked him all the questions you

11   had about it?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Has he answered your questions?

14          THE DEFENDANT:  Yes, he has.

15          THE COURT:  Are there any other questions you want to

16   ask him?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Did you sign this document?

19          THE DEFENDANT:  Yes, I did.

20          THE COURT:  Would you check the last page, please.  Is

21   that your signature there?

22          THE DEFENDANT:  Yes, it is.

23          THE COURT:  Thank you.  Let's go over the

24   constitutional rights, then, that you are giving up today by

25   making your plea of guilty.

1          Under the United States Constitution you have a number

2     of rights and protections and you are giving up some of those

3     today by making your plea of guilty.  First and foremost, you

4     have the right when a charge or charges such as these are

5     brought against you to have them determined by a jury in a jury

6     trial.  Ordinarily that would take place here in this courtroom

7     and the jury would sit to my left in the jury box.

8          Twelve people would serve on that jury and you and

9     your attorney and the government's attorney would be able to

10    participate in the selection of the people who would serve on

11    the jury.  For example, both you and the government could

12    excuse any potential juror if they could not be fair and

13    impartial or they were unwilling or unable to follow the law.

14    In addition, there are a certain number of people that you and

15    certain number of people that the government could excuse

16    without giving any reason whatsoever.

17         Once the jurors are selected, then the jurors take a

18    solemn oath promising to consider only the evidence presented

19    here in the courtroom and to follow the instructions that I

20    give them as to the law.  One of the instructions that I give

21    them tells them that in order to convict you, they must reach a

22    unanimous decision finding that the government has proven every

23    element of a charge or charges against you beyond a reasonable

24    doubt.  Now, inverse of that is that if any juror has a

25    reasonable doubt, you cannot be convicted.

1           Now, during the trial process you have a number of

2    other constitutional rights.  For instance, you have the right

3    to remain silent.  That right has lots of parts.  First, it

4    means no one can compel you to say anything or answer any

5    questions.  Second, it means that the jury can't consider your

6    silence in determining whether the government has proven the

7    charge or charges against you.

8           Third, even if you remain silent, Mr. Hammond doesn't

9    have to.  He can challenge all of the evidence presented by the

10   government, cross-examine all of their witnesses and make

11   arguments to me and to the jury.  And finally, because this is

12   a right, you can waive it.  That means you can change your mind

13   either before the trial or during the trial and you can testify

14   if you want to.  You can put on evidence if you want to.  In

15   fact, you can call witnesses.  And if they are reluctant to

16   come forward to testify, I would compel them to come forward to

17   testify.

18          Now, you have yet another constitutional right and

19   that's the right to be represented by an attorney.  And where

20   you cannot afford an attorney, one is appointed to represent

21   you without any cost to you.  Now, I know that Mr. Hammond has

22   represented you thus far in this case and in the negotiation of

23   this plea agreement, but if you would prefer to go to trial, I

24   can assure you that Mr. Hammond would represent you ably and

25   well at trial.

1           And if you were convicted at trial, you would be able

2   to appeal from your conviction and also from your sentence.

3   But today by making a plea of guilty, you are giving up your

4   right to a jury trial and the constitutional rights that go

5   with it.  You will not be able to appeal from your conviction

6   and for the most part you won't be able to appeal from your

7   sentence either.

8           Do you understand that you will waive your right to a

9   jury trial and other constitutional rights associated with it

10  if you proceed with your plea of guilty today?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Is that what you want to do?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Has anybody pressured you to make this

15  plea today?  And before you answer that question, let me define

16  anybody for you.  It has the broadest definition possible.  It

17  includes family, friends, neighbors, strangers, associates and

18  other folks involved in this case and attorneys and law

19  enforcement folks, people here at the courthouse, people you

20  like, people you don't like and anybody else.  Has anybody

21  pressured you to enter this plea today?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Has anybody promised you something that

24  isn't in the plea agreement?

25          THE DEFENDANT:  No, ma'am.

1        *THE COURT:*  Have you had enough time to review and

2   consider and discuss your plea and plea agreement with

3   Mr. Hammond?

4        *THE DEFENDANT:*  Yes, I have.

5        *THE COURT:*  Are you satisfied with him as your

6   attorney?

7        *THE DEFENDANT:*  Yes, ma'am.

8        *THE COURT:*  Do you have any concerns, complaints or

9   criticism about the legal representation you have received?

10       *THE DEFENDANT:*  No, I don't, ma'am.

11       *THE COURT:*  Do you want to ask Mr. Hammond any

12  questions?

13       *THE DEFENDANT:*  No, ma'am.  He has answered

14  everything.

15       *THE COURT:*  Do you have any questions for me?

16       *THE DEFENDANT:*  No, ma'am.

17       *THE COURT:*  Well, then now is the time to finalize

18  your decision.  This plea agreement, the one you and I have

19  been discussing, do you still want to proceed with it?

20       *THE DEFENDANT:*  Yes, ma'am.

21       *THE COURT:*  You still want to plead guilty to the

22  charge in Count 32 of the original indictment?

23       *THE DEFENDANT:*  Yes, ma'am.

24       *THE COURT:*  Thank you.

25            Mr. Hammond, any reason not to accept the plea and

1    plea agreement?

2              *MR. HAMMOND:*  No, Your Honor.

3              *THE COURT:*  Mr. Till?

4              *MR. TILL:*  No reason not to accept the plea agreement,

5    Your Honor, and the plea.

6              *THE COURT:*  Thank you.

7              The plea agreement anticipates that the government

8    will dismiss all other counts against Mr. Martin.  Mr. Till,

9    would you please make an oral motion at this time.

10             *MR. TILL:*  Your Honor, at this time I would like to

11   enter the government's motion to dismiss Count 31 of the

12   original indictment and the first superseding indictment as to

13   Mr. Martin in its entirety.

14             *THE COURT:*  Thank you.  Does Count 32 to which

15   Mr. Martin pled guilty represent the seriousness of the actual

16   offense behavior?

17             *MR. TILL:*  It does, Your Honor.

18             *THE COURT:*  And if I were to accept this plea and plea

19   agreement, would the statutory purposes of sentencing be

20   undermined in any fashion?

21             *MR. TILL:*  No, Your Honor, they would not.

22             *THE COURT:*  Thank you.

23             Mr. Hammond, I assume you have no objection.

24             *MR. HAMMOND:*  I have no objection, Your Honor.

25             *THE COURT:*  Thank you.

1          Do either of you desire to supplement the record?

2          *MR. TILL:*  Nothing from the government, Your Honor.

3          *MR. HAMMOND:*  No, Your Honor.

4          *THE COURT:*  Thank you.

5          Based on the record made in open court today in Case

6    No. 12-CR-10 encaptioned for purposes of this hearing as the

7    United States of America v. Lawrence T. Martin, I hereby find

8    that the defendant is fully competent to enter an informed

9    plea.  He has been represented through the course of this case

10   and this proceeding and he has no objection, criticism or

11   complaint as to the representation he has received.

12         He is aware of the nature of the charges against him

13   and the effects and consequences of his plea of guilty.  He has

14   knowingly and voluntarily waived fundamental constitutional

15   rights, including his right to a jury trial.  He understands

16   that the penalty that is imposed will be based in part on the

17   facts stated in Exhibit 1, the plea agreement, and that the

18   penalty may exceed the calculations in Exhibit 1.  His plea of

19   guilty is voluntary and knowingly made and the charge and plea

20   is supported by an independent basis in fact.

21         Pursuant to the terms of the plea agreement, the

22   government has moved to dismiss Count 31 of the original

23   indictment and all the charges against Mr. Martin in the

24   superseding indictment.  I find that good cause exists to grant

25   that motion.  Count 32 to which Mr. Martin has pled guilty

1    reflects the seriousness of the actual offense behavior

2    according to the government and the agreement does not

3    undermine the statutory purposes of sentencing.

4          It's therefore ordered that Court Exhibits 1 and 2 are

5    received.  The plea which is made in open court today is

6    accepted and the defendant is adjudged guilty as charged in

7    Count 32 of the original indictment.  The motion to dismiss

8    Count 31 of the original indictment and all counts against

9    Mr. Martin in the superseding indictment is granted, but the

10   effect of this order is stayed until the time of sentencing.

11         The probation department will conduct a presentence

12   investigation and submit a presentence report as required in

13   Rule 32.  And the defendant, with the assistance of counsel,

14   will participate in the investigation and cooperate fully with

15   the probation department.

16         You all have set a sentencing hearing for

17   September 17, 2012.  I don't have a time for that.  Ms. Glover,

18   can you help?

19         *THE COURT DEPUTY:*  It is 3:30.

20         *THE COURT:*  Does that work for everybody?

21         *MR. HAMMOND:*  It does for Mr. Martin, Your Honor.

22         *MR. TILL:*  Yes, Your Honor.

23         *THE COURT:*  Thank you.  That will be our sentencing

24   hearing.  And, of course, at the time of the filing of the

25   notice of disposition, a trial on any charge against Mr. Martin

1   was vacated.  I don't see that there are any pending motions.

2   Have I overlooked anything?

3          *MR. TILL:*  I don't believe so, Your Honor.

4          *MR. HAMMOND:*  There are no pending motions, Your

5   Honor.

6          *THE COURT:*  Thank you.

7          Any other business by the government or the defendant?

8          *MR. TILL:*  Your Honor, the government stipulates that

9   the defendant should remain on bond.  He has done well.  I

10  haven't heard a complaint of any kind from his pretrial

11  services or probation department supervisors.  And, in fact, I

12  am not sure if he intends to do this, but I would actually not

13  oppose if he wants to get off electronic monitoring at this

14  time.

15         *MR. HAMMOND:*  Mr. Till actually took my words out of

16  my mouth.  We would like to have Mr. Martin off electronic home

17  monitoring so that among other things he can take his wife to

18  dinner.  That was her request of me yesterday when we went

19  through the plea agreement.  Your Honor, I don't know if you

20  will do that today.  He is residing in Liberal, Kansas.  He is

21  supervised by the District of Kansas Probation Department, so

22  if there were a hearing we had to go through, I would ask to

23  have his appearance waived.

24         *THE COURT:*  I will go ahead and enter an order

25  directing that the electronic monitoring be abated at this

1    time.  That will be reflected in the minutes of this hearing.

2    But Mr. Hammond, it will fall on you to make sure that the

3    probation department in Kansas is advised of that.  It may not

4    become effective until they unflip the switch, whatever it is

5    they do.

6         *MR. HAMMOND:*  I understand, Your Honor.  And I will

7    get that communication as soon as I receive it from the Court

8    and I will make sure that Kansas receives that.

9         *THE COURT:*  Thank you.  And otherwise all of the terms

10   and conditions on pretrial release remain in effect pending

11   sentencing.

12        Mr. Martin, you want to be sure and check with

13   Mr. Hammond with regard to the time and date and place of

14   sentencing in case there is some change between now and then

15   because you want to be sure to be here for purposes of

16   sentencing.  If you are not, Mr. Till can request that a

17   warrant issue for your arrest.

18        *THE DEFENDANT:*  Yes, ma'am.

19        *THE COURT:*  Any further business, then?

20        *MR. TILL:*  No, Your Honor.  Thank you.

21        *MR. HAMMOND:*  No, Your Honor.  Thank you.

22        *THE COURT:*  Thank you, Mr. Till.  Thank you

23   Mr. Hammond.

24        That will conclude this matter and I will look forward

25   to seeing you all in September.  We will stand in recess.

32

1          (Recess at 2:12 p.m.)

2                    REPORTER'S CERTIFICATE

3          I certify that the foregoing is a correct transcript from

4     the record of proceedings in the above-entitled matter.  Dated

5     at Denver, Colorado, this 21st day of August, 2013.

6

7                              S/Janet M. Coppock____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25