```
 1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
    Criminal Action No. 12-cr-00010-MSK
 3
    UNITED STATES OF AMERICA,
 4
         Plaintiff,
 5
    vs.
 6
    LAWRENCE T. MARTIN,
 7
         Defendant.
 8
    _____
 9
                        REPORTER'S TRANSCRIPT
10                        Sentencing Hearing

11  _____

12        Proceedings before the HONORABLE MARCIA S. KRIEGER,

13  Judge, United States District Court for the District of

14  Colorado, commencing at 3:31 p.m., on the 17th day of

15  September, 2012, in Courtroom A901, United States Courthouse,

16  Denver, Colorado.

17                            APPEARANCES

18        GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19  Suite 700, Denver, Colorado, 80202, appearing for the

20  plaintiff.

21        THOMAS HAMMOND, Attorney at Law, 1544 Race Street,

22  Denver, Colorado, 80206 , appearing for the defendant.

23                 THERESE LINDBLOM, Official Reporter
                  901 19th Street, Denver, Colorado 80294
24             Proceedings Reported by Mechanical Stenography
                    Transcription Produced via Computer
25
```

```
 1                        P R O C E E D I N G S
 2            THE COURT:  Court is convened today in Case No.
 3   12-cr-10.  This is encaptioned as the United States of America
 4   v. Lawrence T. Martin.  The matter is set down for sentencing.
 5            Could I have entries of appearance, please.
 6            MR. TILL:  Good afternoon, Your Honor.  Your Honor,
 7   I'm Guy Till.  I'll an assistant U.S. attorney.  I'm
 8   representing the Government this afternoon, Your Honor.
 9            THE COURT:  Good afternoon and welcome.
10            MR. TILL:  Thank you, Your Honor.
11            MR. HAMMOND:  Good afternoon, Your Honor.  I'm Tom
12   Hammond on behalf of Mr. Martin.  Mr. Martin is seated to my
13   left.
14            THE COURT:  Good afternoon and welcome.
15            MR. HAMMOND:  Thank you.
16            THE COURT:  Are you ready to proceed?
17            MR. TILL:  Government is ready, Your Honor.
18            MR. HAMMOND:  With a preface that I apologize to the
19   Court, as I have to counsel, for filing a motion for below
20   guideline sentence essentially the day before sentencing.  That
21   is not my standard practice.  It is not what is required under
22   the local rules, and I apologize to the Court.
23            THE COURT:  Thank you.
24            And Mr. Till has filed his response today.  Have you
25   received a copy?
```

1       *MR. HAMMOND:* Yes, I have, Your Honor. And he and I
2 have spoken about the case a number of times, so I understand
3 his position.
4       *THE COURT:* All right. Thank you.
5       Mr. Hammond, would you and Mr. Martin please approach
6 the lectern.
7       This matter is before the Court for purposes of
8 sentencing. The record reflects that Mr. Martin was charged on
9 January 9, 2012, in a 32-count Indictment filed in the District
10 of Colorado. He was charged in Count 31 with conspiracy to use
11 and maintain drug-involved premises in violation of 21 U.S.C.
12 Sections 846 and 856(a)(2) and (b) and in Count 32 with using
13 and maintaining drug-involved premises and intentionally aiding
14 and abetting in of violation of 21 U.S.C. Section 856(a)(1) and
15 (2) and (b) and U.S.C. Section 2.
16       On February 6, 2012, a 38-count Superseding indictment
17 was filed, and he was charged with the same numbered counts in
18 that document. On June 25, 2012, he entered a plea of guilty
19 to Count 32 of the original Indictment. The Court accepted his
20 plea, and he was adjudged guilty of -- boy, we've got a problem
21 in the presentence report. Refers to a plea of guilty to Count
22 1 of the Indictment. I believe it was just Count 32 of the
23 original indictment that he entered a plea of guilty to.
24       Is that correct?
25       *MR. HAMMOND:* I believe that's correct, Your Honor.

1         *MR. TILL:*  That's correct, Your Honor.

2         *THE COURT:*  Thank you.  I'll ask the probation officer

3    to amend the presentence report to reflect the correct count.

4         He was adjudged guilty of Count 32 of the original

5    Indictment.  The Court granted the Government's oral motion to

6    dismiss Count 31 of the original Indictment and all of the

7    counts against this defendant in the Superseding Indictment.

8         He's now before the Court for purposes of sentencing,

9    and the record reflects a number of documents pertinent to that

10   issue.

11        I've reviewed the documents found at Docket No. 594,

12   which is the first disclosure of the presentence report; Docket

13   622, which is the final version of the presentence report; 623,

14   which is an addendum to the report; 633, which is a motion for

15   a non-guideline sentence; 634, which is an unopposed motion for

16   leave to file a motion for a non-guideline sentence out of

17   time; and 635, which is the Government's response to 633.

18        Let me inquire of you, counsel, whether there are any

19   other documents that I should be reviewing.

20        *MR. TILL:*  I don't believe so, Your Honor.

21        *MR. HAMMOND:*  None on behalf of Mr. Martin, Your

22   Honor.

23        *THE COURT:*  All right.  And with regard to the

24   presentence report and addenda, that would be Document 622 and

25   addendum at 623.  Is there any objection or dispute with regard

1  to the facts stated in the presentence report?

2  *MR. TILL:*  Not from the Government, Your Honor.

3  *MR. HAMMOND:*  No, Your Honor.

4  *THE COURT:*  Thank you.  Any dispute as to the
5  calculation of the sentence under the federal sentencing
6  guidelines as set forth in the presentence report?

7  *MR. TILL:*  Not from the Government, Your Honor.

8  *MR. HAMMOND:*  No, Your Honor.

9  *THE COURT:*  Any dispute with regard to a calculation
10  of the sentence under the federal sentencing guidelines?

11  *MR. TILL:*  Not from the Government, Your Honor.

12  *MR. HAMMOND:*  On behalf of Mr. Martin, insofar as I --
13  I don't have an objection to the guideline calculation.  I
14  don't have an objection to the criminal history calculation.  I
15  understand the guideline-driven sentence recommendations by
16  probation, but I do have a dispute.

17  *THE COURT:*  Well, I haven't gotten to the area where
18  you have a dispute.

19  *MR. HAMMOND:*  That's why I said it the way that I did.

20  *THE COURT:*  Is there any request that varies from the
21  federal sentencing guideline calculation in order to satisfy
22  the sentencing objectives set forth in 18 U.S.C. Section 3553?

23  *MR. HAMMOND:*  Your Honor, I had anticipated in an
24  abundance of caution filing a motion for a downward departure
25  under Section 5H1.4, given Mr. Martin's physical condition.

1    But I think those issues have been addressed as appropriate in
2    the motion for a non-guideline or below-guideline sentence.
3             *THE COURT:*  Okay.  Well, you filed a motion for a
4    variant sentence.  Would you like to make an argument?
5             *MR. HAMMOND:*  Yes, ma'am.
6             *THE COURT:*  Please.
7             *MR. HAMMOND:*  When the Indictment was issued,
8    Mr. Martin was not in Colorado.  He had left Colorado.  He had
9    left the Hells Lovers motorcycle club.  He had retired.  He was
10   gone, in every since of the word.  He was in Liberal, Kansas.
11   I -- when they found out about the Indictment, Mr. Martin and
12   his wife -- Mr. Martin's wife called me.  I don't want to give
13   up client confidences, but it would be safe to say that I'm the
14   kind of lawyer that says, if there is an arrest warrant out for
15   you from the United States government, the best thing you can
16   do is leave your home in Liberal, Kansas and come to Denver and
17   answer up to that Indictment.
18            Mr. Martin was apprehended in his car, driving west on
19   I-70 from Liberal, Kansas to -- I'm not sure what town it
20   was --
21            *THE DEFENDANT:*  Between Oakland and Colby.
22            *MR. HAMMOND:*  He was close to Colby, Kansas, on his
23   way to Denver to either meet the U.S. Marshals or me to meet
24   with the U.S. Marshals to turn himself in.  He was doing the
25   right thing.

1            He went in.  We had a detention hearing.
2   Unfortunately, especially given his medical circumstances, he
3   was remanded into the custody of the Marshal Service and spent
4   65 days in the Federal Detention Center.
5            With the issues that he has medically with his
6   diabetes, it was not easy.  I'm not saying that it should be an
7   easy time to be in custody pending the outcome of a case when
8   you're charged criminally, but for him it was more difficult
9   than most because of his diabetes and his high blood pressure.
10  They were able to get him the medication that he needed, but
11  they were never able to quite get the diet in the manner in
12  which he needed it.  So there were a number of days he had to
13  go hungry because he could not have the high-sugar, I think it
14  was also high-fat diet that is not uncommon, by any means, at
15  the federal detention.
16           *THE COURT:*  Or elsewhere.
17           *MR. HAMMOND:*  I'm sorry?
18           *THE COURT:*  Or elsewhere.
19           *MR. HAMMOND:*  Well, it's a uniquely American issue
20  that we have to deal with.
21           But he elsewhere, at home, can control his diet.  And
22  with the medication and the diet in combination, he can control
23  his high blood pressure, he can control his diabetes.  It is
24  much more difficult for him to control that in a custodial
25  confinement situation.

1     I think it was March 29, Your Honor, that we revisited
2  the issue of Mr. Martin's custody, and he was released on bond.
3  He has maintained constant contact with me.  He has complied
4  with all the conditions of his bond.  He has been on electronic
5  monitoring since he left Denver, I believe, or when he got to
6  Kansas, when we hooked it up to his house and his phone.  He
7  has not had any issue with any of the conditions of Pretrial
8  Services supervision.  And to the best of my knowledge, he
9  hasn't had any contact with any of the defendants.

10     There was an issue at one point in this case -- and I
11  think, although I'm not trying to say I know what the lower
12  court was thinking when Mr. Martin was detained -- but there
13  was an issue with other defendants in the case and others who
14  wanted to make threats to people who had cooperated with the
15  Government.  They wanted to at least make the communication
16  that this was not something that they really liked, and they
17  wanted to -- there were at least communicate, if not threaten
18  folks.  That wasn't Mr. Martin.  He wasn't involved in that.
19  He was never involved in it.  Since he's been out of custody,
20  he hasn't been involved in it.  He is not that kind of guy.  He
21  is done.

22     When he came out here to answer up to the Indictment,
23  he was working for Great Lakes Airlines, had just gotten a job,
24  had just gotten settled in the job.  They were getting ready to
25  give him a promotional examination, and suddenly he's gone for

 1   close to twos month, at least a month and a half.  Not
 2   surprisingly, when he got on bond, by the time he got back to
 3   Kansas, by the time he got back to the airline, they said,
 4   you're done, sorry, we couldn't hold the job any longer for
 5   you.
 6           He got another job.  He's working at the meat packing
 7   plant in Kansas.  He is doing what he needs to do.
 8           There are a number of fears I have for him.  He -- I'm
 9   sorry, I forgot to tell the Court and counsel -- I'm sure this
10   Court has read the litany of medical issues that Mr. Martin
11   has.  In addition to diabetes and high blood pressure, if I
12   squeeze really hard on his left shoulder, he will scream out in
13   pain because he tore that and is waiting surgery.  One of the
14   reasons he's waiting surgery is because he's got to be six
15   months on the job at his new employment in order for his
16   insurance to kick in so he could take advantage of the
17   insurance and get his shoulder fixed.
18           I think this court is well aware, as I think just
19   about everyone is, the Bureau of Prisons does not accommodate
20   medical issues as well as they could, or at least as well as
21   they should.  We're all suffering economic hardship right now.
22   But getting him into a surgical setting, given his left
23   shoulder and the problems that he has, I don't see that
24   happening, even under the sentence that is recommended by the
25   Probation Department.

1          As I stated in the motion, Your Honor, Mr. Martin, if
2   he received credit for the confinement or quasi confinement
3   status that he's had while he has been on electronic monitoring
4   for the last 172 days, he would fulfill that condition of
5   combined confinement, both in the Federal Detention Center for,
6   which he does get presentence confinement, and while he's been
7   on electronic monitoring.
8          Given what he is, what he is not, that he is not a
9   member of the Hells Lovers motorcycle club any longer, that he
10  left that club before the Indictment was even issued, that he
11  moved to Kansas and really doesn't have contact with those
12  folks -- the folks he has contact with in Kansas are his wife
13  and his family.  That's what he does, and he works.  Given that
14  he doesn't have those correctional needs, I think it makes
15  common sense to either give him credit for the 172 days that
16  he's had or to continue him on some kind of electronic
17  monitoring so at least he can deal with his medical issues,
18  especially those which we know the Bureau of Prisons does not
19  do that good of job of addressing.  And that's his medication,
20  his diet, and his need for yet another surgery.
21         In the time that I've known Mr. Martin, he is a
22  uniquely quiet man.  He is a man of very few words.  In fact, I
23  was surprised -- quite surprised that Mr. Lynch was able to get
24  as many words out of Mr. Martin as he did.  It was more than
25  I've had with him.  He is a quiet man, a deliberate man, he

1  does what he does.  The reason he got into this case is because
2  he got into the Hells Lovers motorcycle club, and at some point
3  in time he was the president.  During the course of the
4  investigation, during those times during the investigation, he
5  was the president of the club.  There is no one that I know in
6  the discovery or otherwise who has suggested that Mr. Martin
7  was using cocaine, that Mr. Martin was distributing cocaine,
8  that he was using marijuana, that he was distributing
9  marijuana, or that he even possessed a weapon or was
10 brandishing it or anything like that.

11         My understanding of how he comes into the case is
12 that, as he was the president, when they had the meetings, he
13 was aware by visual contact that there were others in the club
14 who were doing stuff in the club, in the clubhouse.  He did not
15 participate, but he knew that at least something was going on.
16 I think that is something to take into consideration,
17 considering the nature and circumstances of the offense and the
18 nature and circumstances of Mr. Martin himself.

19         He, to the best of my knowledge and understanding, has
20 done as much as he can to keep up his financial obligations to
21 his children and to everyone with whom he has an obligation.

22         He would do perfectly well on probation.  He has no
23 rehabilitation requirements.  He has -- probation noted in the
24 end of the probation report that he doesn't seem to get the
25 message because he has a prior felony from 1986.  That seems to

1  me to be about 26 years ago.  And I dare say, as little as I
2  know this man, he is not the man today that he was in 1986.  He
3  has worked all of his life.  He has maintained his obligations
4  to his family, to his children.  He continues to do that today.
5  His biggest goal in life, and I think I put that in the motion,
6  is he wants to take his kids fishing.  He wants to be with his
7  grandchildren.
8      Confinement has a number of negatives for Mr. Martin
9  that do not show up on a defendant who is similarly situated,
10 primarily because of his medical condition.  But I dare say,
11 again, that I don't know that you're going to find somebody who
12 has got the combination that he has, where he has a criminal
13 history of I -- because I say that since 1986, he has gotten
14 the message.  I say that since 1986, he has been successful, he
15 has been hard working, he has maintained his obligations to
16 both his family and to the community at large.  And I think
17 that he will continue to do that if the Court would grant him
18 probation.
19     There is something else that I want to say, Your
20 Honor, and I -- I'm going to come up with it I hope sometime so
21 I don't keep repeating myself.
22     The cost of custody in terms of hard dollars is a
23 higher cost than it is for probation.  The common sense cost
24 and cost to Mr. Martin, given his physical issues, is far
25 higher.  Your Honor, I would ask the Court to consider a

1    non-guideline probationary sentence.

2            *THE COURT:*  Thank you.

3            Response.

4            *MR. TILL:*  Your Honor, I would agree that the
5    defendant did make a change, but I don't think it was 1986.
6    I'd submit that he did make a change when he moved to Liberal,
7    Kansas, which I think was in 2011.  So he did actually take
8    that initiative, which reflects some good judgment on his part.
9    There were investigative things happening at the time, there
10   were problems with Wheels of Soul that were not the fault of
11   the defendant.  Wheels of Soul members were also engaging in a
12   RICO trial with crimes of violence as RICO predicate acts in
13   Missouri at this time.  Some of the predicate acts occurred
14   here in Colorado.  So he was smart enough, I would submit, and
15   mature enough to realize it was time to actually retire, which
16   he did.  So that's a good thing.

17           And I do believe, as indicated in the written
18   response, I think they're not making up medical issues.  I
19   think he truly does have medical issues.  And with respect to
20   his conduct, while he was in the Federal Detention Center,
21   while he's been bond, there have been -- not that there is any
22   assumption there would be -- there has been no suggestion at
23   all that he has tried to see any witness, which he truly does
24   accept responsibility, which he does have, because he was the
25   president, he was a dues paying member, they were working

1  together to support the collective activities of the group.
2  Therefore, I do support a guideline sentence.
3  One thing that I did notice, I didn't put in my
4  written paper, Your Honor.  Now might not be the right time to
5  mention it, but I notice that probation does allow the Court
6  allow him to surrender voluntarily if the Court does impose a
7  period of confinement, and I would agree with that.
8  *THE COURT:* Thank you.
9  Is there any further argument that either side wants
10 to make with regard to sentencing?
11 *MR. HAMMOND:* No, Your Honor.  Not on behalf of
12 Mr. Martin.
13 *MR. TILL:* No, Your Honor.  Thank you.
14 *THE COURT:* Thank you.
15 Mr. Martin, do you want to make a statement?
16 *THE DEFENDANT:* I'm just sorry I got myself into this
17 mess.  I really am.
18 *THE COURT:* Thank you.
19 Imposition of a sentence in a federal criminal case is
20 governed by a number of statutes.  The umbrella statute is 18
21 U.S.C. Section 3553.  In imposing sentence in this case, as in
22 all cases, I'm required to consider the objectives and the
23 factors that are set forth in that statute.  The statute
24 requires that the sentence be sufficient but not greater than
25 necessary to satisfy particular objectives.  So the sentence

1  must reflect the seriousness of the offense; promote respect
2  for the law; provide just punishment; adequately deter criminal
3  conduct; protect the public from further crimes by the
4  defendant; provide the defendant with needed educational or
5  vocational training, medical care, or other correctional
6  treatment in the most effective manner.
7            To fashion a sentence that meets these objectives, the
8  statute tells me what factors I can consider:  The nature and
9  circumstances of the offense; the history and characteristics
10 of the defendant; the kinds of sentences that are available;
11 the sentence prescribed by the federal sentencing guidelines;
12 and the need to avoid unwarranted sentence disparities among
13 defendants with similar records found guilty of similar
14 conduct.  In the appropriate case, I'd also consider
15 restitution.
16           I indicated at the beginning of this hearing the
17 documents that I have studied in order to prepare for the
18 hearing.  I've confirmed with counsel that they have had an
19 opportunity to look at those, that there aren't any others that
20 I should be considering, that there is no factual dispute with
21 the contents of the presentence investigation report other than
22 the typographical error that was identified at the beginning of
23 this hearing, that there is no dispute as to the calculation
24 under the guidelines as set forth in the report.  The only
25 question that is before the Court is whether a guideline

 1   sentence or a non-guideline sentence should be imposed, and
 2   I've heard argument with regard to that.  I've also heard in
 3   those arguments, argument as to what kind of sentence is
 4   appropriate and what I should be considering with regard to
 5   imposition of a sentence.
 6           The first step in calculating what sentence is
 7   appropriate is to engage in the calculation under the
 8   guidelines.  And as I indicated, there is no dispute as to
 9   that.  What the presentence report provides is that the Base
10   Offense Level for violation of 21 U.S.C. Section 856(a)(1) and
11   (2) and (B) is set by Section 2D1.8(a)(1) of the guidelines.
12   And, again, we have another typographical error in that section
13   of the presentence report, and I'll ask our probation officer
14   to correct it.
15           Because the type and amount of drugs involved in this
16   offense was less than 25 grams of cocaine, the Base Offense
17   Level is 12, in accordance with Section 2D1.1(c)(4).  There are
18   no specific offense characteristics, victim-related
19   adjustments, adjustments in the role of the offense,
20   adjustments for obstruction of justice; therefore, the adjusted
21   offense level is 12.  There is a downward adjustment for
22   Mr. Martin's acceptance of responsibility in accordance with
23   Section 3E1.1(a), and that results in a Total Offense Level of
24   10.
25           There is no disagreement between the parties that

1  Mr. Martin has a criminal history calculation of zero criminal
2  history points.  That puts him in a Criminal History Category
3  of I, which is the lowest criminal history category under the
4  federal sentencing guidelines.  The only conviction he has that
5  might have at an earlier point in time resulted in criminal
6  history points is a conviction in 1986, which is so old that no
7  points are assigned to it.
8            With a Criminal History Category of I and a -- an
9  offense level of 10, the guidelines recommend incarceration of
10 6 to 10 months, supervised release of 1 to 3 years.
11 Alternatively, there can be a period of probation of 1 to 5
12 years, a fine of 2,000 to $20,000, and there is a statutory
13 requirement of a special assessment of $100 for the count of
14 conviction.
15           Working backwards through the calculation, I intend to
16 impose a special assessment of $100.  I do not intend to impose
17 a fine, finding that the defendant lacks the ability to pay a
18 fine.
19           With regard to the question of probation, supervised
20 release, and a custodial term, I find the following:
21           The only sentencing objective -- objectives that
22 warrant any further sentence as far as I'm concerned are the
23 sentencing objectives designed to promote respect for the law
24 and to deter criminal conduct.  Mr. Martin was involved in an
25 organization that was engaged in illegal activity.  He was the

1  president of that organization.  Beyond being the president of
2  that organization, however, there are no facts before me that
3  suggest he did anything illegal.  And, indeed, he is only --
4  his only conviction is some 26 years old -- actually, it's a
5  little longer than that.

6  He's been on supervised release -- he's been on
7  supervision, pretrial supervision, for the entire period of
8  this case after he was released on bond.  He's complied with
9  all of the requirements on his pretrial supervision, he's been
10 on electronic detention, and it does not appear to me that
11 further incarceration serves any useful purpose.  I do not
12 intend to impose a guideline sentence.  I intend to impose, as
13 is requested, a probationary sentence, but probation only for a
14 1-year period, not a 3-year period, as recommended by the
15 probation office.

16 And I do so in light of the fact that Mr. Martin has
17 voluntarily separated himself from the organization in which he
18 was the president, he's not engaged in any illegal conduct
19 that's been brought to my attention, he's complied with every
20 restriction that has been placed on him, and that sentence
21 would constitute a sentence that is sufficient but not greater
22 than necessary to satisfy the statutory objectives.

23 Any need for clarification, further explanation, or a
24 request for a continuance because I may have touched on an
25 issue that you haven't had adequate opportunity to address?

1      *MR. TILL:*  Your Honor, I just have a question.  Is
2   that probation with any kind of home confinement, or just
3   regular probation?
4      *THE COURT:*  Regular probation.
5      *MR. TILL:*  All right.  Thank you.
6      *MR. HAMMOND:*  Your Honor, on behalf of Mr. Martin, we
7   have no need for further clarification.
8      *THE COURT:*  All right.  Thank you.
9      Then pursuant to the Sentencing Reform Act of 1984, it
10  is the judgment of the Court that the defendant, Lawrence T.
11  Martin, be sentenced to a term of probation for a period of 1
12  year.  Standard conditions on probationary term will apply, but
13  there will be no home detention or electronic monitoring.
14      Mr. Martin will not commit another federal, state, or
15  local crime; he will not possess a firearm as defined in 18
16  U.S.C. Section 921; he'll comply with the standard conditions
17  that have been adopted by the Court.  He will not unlawfully
18  possess a controlled substance, he will refrain from any
19  unlawful use of a controlled substance, he will submit to at
20  least one drug test within 15 days of release on probation and
21  two periodic tests thereafter, he'll cooperate in the
22  collection of DNA.  Having found that he lacks the ability to
23  pay a fine, none is imposed.  He will, however, pay a special
24  assessment of $100, which is due immediately.
25      And pursuant to Rule 32.2 of the Federal Rules of

1  Criminal Procedure, to the extent that there is a restitution
2  request, which I'm not sure of at this juncture --
3          *MR. TILL:*  There is no restitution request, Your
4  Honor.
5          *THE COURT:*  Okay.  Thank you.
6          Then the bond conditions are lifted effective today,
7  and the Probation Department is directed to disconnect the
8  electronic monitoring as soon as possible.
9          Is there any further issue to bring before the Court?
10         *MR. TILL:*  No, Your Honor.
11         *MR. HAMMOND:*  Not on behalf of Mr. Martin, Your Honor,
12 thank you.
13         *THE COURT:*  Thank you, Mr. Till; thank you,
14 Mr. Hammond; thank you to our probation officers and to our
15 court staff and our marshal staff.  That will conclude this
16 matter.  We'll stand in recess.
17         (Recess at 4:05 p.m.)
18                    REPORTER'S CERTIFICATE
19
20    I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
21
22       Dated at Denver, Colorado, this 22nd day of August, 2013.
23                              s/Therese Lindblom
24                              _____
                                Therese Lindblom,CSR,RMR,CRR
25